Entered: September 30th, 2026
Signed: September 30th, 2026

MARIA ELLENA CHAVEZ-RUARK
U.S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | |
|---|---|
| In re:<br><br>DRAE WATKINS,<br><br>Debtor. | Case Number: 25-14502-MCR<br>(Chapter 13) |

# MEMORANDUM OPINION IN SUPPORT OF ORDER DENYING RUBEN PARTIES' SECOND MOTION TO DISMISS AND DEBTOR'S MOTION TO ENFORCE AUTOMATIC STAY

Before the Court are a Motion to Dismiss Case [ECF No. 118] filed by Stephen D. Ruben and the Law Offices of Ruben and Ruben, LLC and a Motion to Enforce the Automatic Stay and for Order to Show Cause [ECF No. 103] filed by Drae Watkins. The Court has considered both motions, the related responses, the record in this case, and applicable law and finds that a hearing would not aid the decisional process. *See* Md. L. Bankr. R. 9013-1(b) ("Except as otherwise provided in the Bankruptcy Code, the Federal Bankruptcy Rules, these Rules or by the Court, the Court may decide a motion on the papers filed.").

For the reasons set forth herein, the Court will deny both motions.

## I. BACKGROUND

On May 20, 2025, Drae Watkins (the "Debtor") filed a Chapter 13 Voluntary Petition [ECF No. 1] (the "Petition"). The Debtor's Verification of Creditor Matrix filed with the Petition lists one creditor – Capital One. The Debtor's Schedules D and E/F [ECF No. 37] list "U.S. Bank & Trust" as having a secured claim in the amount of $542,333.00, the "Maryland Dept of Taxation" as having a secured claim in the amount of $60.00, the "PG Office of Finance" as having a secured claim in the amount of $17,057.47, and Capital One as having two priority, unsecured claims in the amounts of $1,370.00 and $570.00. Six proofs of claim have been filed in the Debtor's bankruptcy case, and the claims bar date has now passed. The creditors who filed a proof of claim are Merrick Bank; OneMain Financial Group, LLC; Quantum 3 Group LLC as agent for Mercury Financial/First Bank & Trust; LVNV Funding, LLC; TD Retail Card Service; and Washington Suburban Sanitary Commission.

The Debtor's Chapter 13 Plan [ECF No. 38] (the "Plan") proposes monthly plan payments of $500.00 for 36 months. On September 30, 2025, the Court held a hearing to consider confirmation of the Plan at which the Chapter 13 trustee, Timothy P. Branigan (the "Trustee"), stated that he was unable to conduct the meeting of creditors because the Debtor had not provided copies of his identification. The Trustee further stated that the Debtor had not made any plan payments and had not provided various requested documents to the Trustee. The Debtor responded that he had recently obtained bankruptcy counsel (Stephen Ruben) and that he would promptly provide all required documents and make the missed plan payments. The Court continued the hearing for four weeks and advised the Debtor that it would deny confirmation without leave to amend if the Debtor did not make substantial progress with his plan payments by the time of the next hearing.

The Court held the continued hearing on October 28, 2025, at which the Trustee stated that the Debtor had provided some documents and had made one plan payment of $200.00, bringing his total plan default to $2,300.00. The Debtor explained that the government shutdown had affected his ability to make plan payments. The Court encouraged the Debtor to engage counsel, continued the hearing for an additional two weeks, and advised the Debtor that it would deny confirmation without leave to amend if he was not current on plan payments by the next hearing.

On November 12, 2025, the Court held the continued confirmation hearing. At the hearing, the Trustee reported that the Debtor was still behind on his plan payments by $2,000.00 (four months). Consequently, as warned twice previously, on November 13, 2025, the Court entered an Order Denying Confirmation Without Leave to Amend [ECF No. 67] (the "Order Denying Confirmation"). On November 25, 2025, the Debtor filed a Notice of Appeal of the Order Denying Confirmation [ECF No. 71]. As of the date of entry of this Order, the appeal remains pending in the United States District Court for the District of Maryland.

On April 14, 2026, Stephen D. Ruben and the Law Offices of Ruben and Ruben, LLC (the "Ruben Parties") filed a Motion to Dismiss Chapter 13 Case or, in the Alternative, to Convert the Case for Cause Pursuant to 11 U.S.C. § 1307(c) [ECF No. 97] (the "First Motion to Dismiss") and a Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) [ECF No. 98] (the "Lift Stay Motion"). The Lift Stay Motion sought relief from the automatic stay "to permit Movants to prosecute their compulsory counterclaims against the Debtor in a pending Maryland state-court action to final judgment for liquidation purposes only." On the same day, the Ruben Parties filed an Amended Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) [ECF No. 99] (the "Amended Lift Stay Motion"), which superseded and replaced the original Lift Stay Motion. The Amended Lift Stay Motion appears identical to the Lift Stay Motion

but adds the following exhibits: (i) a copy of an invoice from "AEPOP" issued to Stephen Ruben in the amount of $1,529.00 with an "Order Date" of January 6, 2026; (ii) a copy of the complaint filed on January 22, 2026, by the Debtor against the Ruben Parties in the District Court of Maryland for Prince George's County (the "State Court") in the case styled *Watkins v. Law Offices of Ruben and Ruben LLC, et al.*, Case No. D-05-CV-26-007630 (the "State Court Action") seeking damages of $1,529.00 plus six percent (6%) interest for "8 months of web hosting, business phone, and meeting [sic] system services provided" from May until December; (iii) a copy of the counterclaim filed by the Ruben Parties in the State Court Action on April 2, 2026, seeking damages in the amount of $30,000.00 based on an alleged "blackout" by the Debtor of "all hosting and email access without notice" on December 11, 2025; and (iv) a Notice of Bankruptcy Filing and Suggestion of Automatic Stay filed by the Debtor in the State Court Action on April 7, 2026.

On April 22, 2026, the Debtor filed a Notice of Filing Supplemental Exhibits in Support of Motion to Enforce the Automatic Stay and for Order to Show Cause [ECF No. 103] (the "Motion to Enforce Automatic Stay").[1] The Motion to Enforce Automatic Stay asserts that the Ruben Parties filed a motion in the State Court Action on April 14, 2026, in which they asked the State Court to enter an order recognizing the Debtor's bankruptcy filing, staying any further proceedings to the extent they constitute the prosecution of claims against the Debtor within the meaning of Section 362(a), and clarifying that the Ruben Parties are not pursuing any action in the State Court that would violate the automatic stay. The Debtor attached a copy of the Ruben Parties' motion as an exhibit to the Motion to Enforce Automatic Stay along with (i) an application for statement of charges dated January 24, 2026, filed by the Stephen D. Ruben against the Debtor in the State

[1] Although the title of the pleading suggests that the Debtor previously filed a motion to enforce the automatic stay, he did not. Therefore, the Court treats this pleading as a motion to enforce the automatic stay.

Court in a new case (Case No. D-05-CR-26-000471); (ii) a notice issued by the State Court on March 3, 2026, confirming that it will not prosecute Case No. D-05-CR-26-000471; (iii) a summons issued on March 31, 2026, to the Debtor by the District Court of Maryland for Anne Arundel County in the case styled *State of Maryland* v. *Drae J. Watkins* (Case No. D-07-CR-26-004974) (the "Criminal Case"); (iv) a copy of the docket report in the Criminal Case identifying a filing date of March 20, 2026, identifying "Ruben, Stephen" as the complainant, and setting forth four criminal charges (*i.e.*, extortion, unlawful possession or publication of computer access codes, obstruction of justice, and harassment); and (v) a document titled "Memorandum of Record: Timeline of Vindictive Prosecution and Demand for Investigation" prepared by the Debtor in connection with the Criminal Case, dated April 20, 2026, describing alleged actions undertaken by the parties from December 11, 2025 to March 30, 2026.

On April 23, 2026, the Court issued deficiency notices for the First Motion to Dismiss and the Amended Lift Stay Motion [ECF Nos. 101 and 102] because the filings did not include notices required under the Court's local rules. On May 14, 2026, the Court entered orders striking the First Motion to Dismiss and the Amended Lift Stay Motion [ECF Nos. 108 and 109] because the Ruben Parties did not correct the stated deficiencies. On May 19, 2026, the Debtor filed an Amended Supplemental Status Update to Enforce the Automatic Stay and for Sanctions [ECF No. 112] (the "Supplemental Statement"). The Supplemental Statement "updates" the Motion to Enforce Automatic Stay and states that the Criminal Case was dismissed on May 7, 2026. It also alleges that the Ruben Parties are attempting to "weaponize" this Court through improper *ex parte* filings – namely, the First Motion to Dismiss and the Amended Lift Stay Motion – without the requisite notices and without serving copies on the Debtor in a "calculated attempt to secure federal relief secretly and deprive the Debtor of due process." The Supplemental Statement requests that

the Court "grant the pending Motion for Sanctions" against the Ruben Parties, award "actual damages and costs incurred by the Debtor," and impose punitive damages pursuant to Section 362(k)(1) for the Ruben Parties' alleged violations of the automatic stay. The Court notes that, as of the filing of the Supplemental Statement, there was no pending motion for sanctions against the Ruben Parties.

On June 10, 2026, the Ruben Parties filed an opposition to the Supplemental Statement [ECF No. 117] in which they argue that they were not listed as creditors in the Debtor's bankruptcy schedules and never received "formal notice" of the bankruptcy filing. The Ruben Parties further assert that the Criminal Case is not relevant to the Debtor's bankruptcy case and was exempt from the automatic stay because it was a criminal proceeding against a debtor. The Ruben Parties deny that sanctions are warranted under Section 362(k) and explain that (i) they chose not to cure the deficiencies regarding the First Motion to Dismiss and the Amended Lift Stay Motion so they never "legally became active motions in this case;" (ii) the State Court Action involves the Debtor's corporate entity, AEPOP, LLC, which has not filed for bankruptcy and therefore is not subject to the automatic stay; (iii) they have filed all documents through the Court's CM/ECF system, thereby providing electronic notice to all registered participants;[2] (iv) they have "no formal standing, interest, or active engagement in the debtor's estate asset distribution" because they were not listed as creditors; and (v) the issuance of the notice of non-prosecution in the Criminal Case was an exercise of "administrative prosecutorial discretion that leaves the state fully free to re-indict or revive the charges in the future."

---

[2] The Debtor, who is proceeding *pro se* in his bankruptcy case, is not a registered CM/ECF participant and does not receive electronic notices in this case.

Also on June 10, 2026, the Ruben Parties filed a second Motion to Dismiss Case [ECF No. 118] (with the exhibits filed at ECF No. 119, the "Second Motion to Dismiss") seeking dismissal of the Debtor's case pursuant to Section 1307(c) based on the Debtor's alleged bad faith conduct. The Second Motion to Dismiss asserts that the Debtor's bankruptcy case is an abuse of the bankruptcy system because it was not filed to "achieve a legitimate financial reorganization or to manage honest debt." Instead, the Ruben Parties argue, "this Chapter 13 petition is a bad-faith tactical litigation maneuver designed to shelter a serial, *pro se* vexatious litigant from the consequences of his tortious actions, while providing him a federal platform to continue a relentless campaign of harassment against his former legal counsel, Stephen D. Ruben Esq." The Motion to Dismiss then describes the history between the parties and the various legal actions that were commenced after the alleged "digital kidnapping" by the Debtor on December 11, 2025. The Court notes that, unlike the First Motion to Dismiss, the Second Motion to Dismiss was served on the Debtor by first-class mail at his address of record, and the Ruben Parties filed and served the required notice for the Second Motion to Dismiss [ECF No. 121] on June 14, 2026, after the Court issued a deficiency notice [ECF No. 120] for the missing notice.

On June 16, 2026, the Debtor filed a Motion for Sanctions and Motion to Strike Deficient Motion to Dismiss [ECF No. 123] (the "Motion for Sanctions") requesting that sanctions be imposed against the Ruben Parties and that the Second Motion to Dismiss be stricken for alleged "bad-faith filing practices and deliberate violations of due process." On June 18, 2026, the Court summarily denied the Motion for Sanctions with the following notation:

> The relief sought is unwarranted. Mr. Ruben filed his motion to dismiss on June 10, 2026, the Court issued a deficiency notice regarding the missing notice on June 12, 2026, and Mr. Ruben promptly cured the deficiency on June 14, 2026. If the Court were to sanction a party every time they filed a deficient pleading, the

> Debtor would have been sanctioned seven times. See [ECF] Nos. 22, 42, 45, 48, 56, 62, and 83.

Order denying Motion for Sanctions [ECF No. 124].

On July 7, 2026, the Debtor filed an opposition to the Second Motion to Dismiss [ECF No. 126] and a reply in support of his Supplemental Statement [ECF No. 127]. The Debtor's reply states that the Ruben Parties had notice of the Debtor's bankruptcy filing as early as June 18, 2025, when Mr. Ruben emailed the Debtor with bankruptcy advice, and that the Ruben Parties filed the counterclaim in the State Court Action on April 2, 2026, despite their knowledge of the Debtor's bankruptcy case. The Debtor attached a copy of an email from law@rubenandruben.com to the Debtor dated June 18, 2025, to his reply.

After the flurry of filings and the Court's issuance of orders on some of the pending motions, the Ruben Parties' Second Motion to Dismiss and the Debtor's Motion to Enforce Automatic Stay remain pending. For the reasons set forth below, the Court will deny both motions.

## II. ANALYSIS

### A. The Ruben Parties' Second Motion to Dismiss

Section 1307 of the Bankruptcy Code provides, in pertinent part: "Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause[.]" 11 U.S.C. § 1307(c). Local Bankruptcy Rule 9001-1, in turn, defines "party in interest" as "a party having an interest in the bankruptcy case, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, an indenture trustee, a party to a contract or lease with the debtor, a co-debtor, and a co-owner of property of the estate." Md. L. Bankr. R. 9001-1(k).

1. The Ruben Parties appear to lack standing to seek relief from this Court.

The Court questions whether the Ruben Parties are parties in interest who have standing to seek dismissal of the Debtor's bankruptcy case. It is unclear whether the Ruben Parties possess a prepetition claim against the Debtor under Section 502(b),[3] whether they have a post-petition claim that may be allowed under Sections 507(a)(2) and 503(b),[4] and whether the Debtor and the Ruben Parties are parties to an executory contract with the Debtor subject to Section 365.[5] If the answer to any of these questions is in the affirmative, then the Ruben Parties would be parties in interest. Although the Court cannot answer any of the questions based on the record, the Court need not determine these issues to determine the Second Motion to Dismiss. In short, if the Ruben Parties are not parties in interest, then the Second Motion to Dismiss must be denied because the movants lack standing to seek dismissal. If the Ruben Parties are parties in interest with standing to seek dismissal, then the Court must deny the Second Motion to Dismiss because the Ruben Parties have not demonstrated "cause" under Section 1307(c).

Based on the record before the Court, it appears that the Ruben Parties are not "parties in interest" in this bankruptcy case and, therefore, do not have standing to file the Second Motion to Dismiss. All of the allegations against the Debtor made by the Ruben Parties relate to post-petition events commencing on December 11, 2025, when the Debtor allegedly caused a "digital kidnapping" or "blackout" that caused harm to the Ruben Parties. Any post-petition claim in favor of the Ruben Parties arising from the Debtor's actions would be allowed only if it falls within one

---

[3] Section 502(b) sets forth the bases for a court to disallow a prepetition claim after an objection to the claim is made.

[4] Section 507(a)(2) provides that administrative expense claims allowed under Section 503(b) are entitled to second priority (after certain domestic support obligations). Section 503(b) provides for the allowance of administrative expense claims in nine narrowly-defined circumstances.

[5] Section 365 addresses the rights of the debtor and counterparties under executory contracts (which term is defined under case law) and unexpired leases of real and personal property.

of the narrowly-defined subparagraphs of Section 503(b) of the Bankruptcy Code, and none of those subparagraphs applies here.[6]

Moreover, the Court cannot determine, based on the record, that the Ruben Parties are parties to an executory contract with the Debtor. The Debtor did not identify any potential contract with the Ruben Parties (or anyone else) on his schedule of executory contracts and unexpired leases (Schedule G), it appears the parties did not have a written agreement setting forth the terms governing the parties' relationship, and the Debtor's company, AEPOP, LLC (as opposed to the Debtor), issued the invoice to the Ruben Parties for services allegedly rendered. It is therefore unclear whether there is an agreement between the Debtor and the Ruben Parties and, if so, when any such agreement went into effect, what the terms were, and when the agreement terminated (if it terminated). More importantly, there is nothing to confirm whether any agreement that may have existed between the Debtor and the Ruben Parties constitutes an "executory contract" under Section 365 and applicable law. Instead, the Ruben Parties' counterclaim generally describes the parties' agreement as "a long-standing 'Barter Arrangement' where Counter-Plaintiffs provided professional services to Watkins in exchange for web hosting and email services," while the Debtor generally claims the Ruben Parties owe him for services rendered from May to December 2025. It is conceivable that the parties' agreement could have been in place before the Debtor filed this bankruptcy case on May 20, 2025, but notably, the Ruben Parties (a law firm and an attorney admitted to practice in this Court) admit that they do not have standing in this bankruptcy case in

---

[6] Section 1305(a) of the Bankruptcy Code also provides for the allowance of a post-petition claim under two limited circumstances, but any claim the Ruben Parties' may have falls far outside the scope of this section.

their opposition to the Supplemental Statement where they state that "they have no formal standing, interest, or active engagement in the debtor's estate asset distribution."[7]

Lastly, the Ruben Parties have not filed a proof of claim against the Debtor in this case for any pre- and/or post-petition legal services rendered to the Debtor.[8]

Simply put, there is nothing in the record to confirm that the Ruben Parties are parties in interest with standing to seek relief from this Court.

2. The Ruben Parties have not demonstrated cause for dismissal.

Although the Court could conduct an evidentiary hearing to determine whether the Ruben Parties are creditors, administrative expense claimants, and/or parties to an executory contract with the Debtor, the Court need not conduct any such hearing because the Second Motion to Dismiss fails to set forth sufficient cause to dismiss this case under Section 1307(c).

Section 1307 sets forth a nonexhaustive list of circumstances that may constitute "cause" for conversion or dismissal:

> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees and charges required under chapter 123 of title 28;
> (3) failure to file a plan timely under section 1321 of this title;
> (4) failure to commence making timely payments under section 1326 of this title;

[7] The Ruben Parties are judicially estopped from asserting that they have standing to file the Second Motion to Dismiss while admitting that they have no standing or interest in this bankruptcy case. The United States Court of Appeals for the Fourth Circuit has invoked the doctrine of judicial estoppel to prohibit litigants from "playing fast and loose" or "blowing hot and cold" by barring parties from taking inconsistent positions during the course of litigation. *Federal Deposit Ins. Corp. v. Jones*, 846 F.2d 221, 234 (4th Cir. 1988) (quoting *United Virginia Bank v. B.F. Saul Real Estate*, 641 F.2d 185, 190 (4th Cir. 1981)). *See also Keathley v. Buddy Ayers Constr., Inc.*, 608 U.S. 647, 655, 146 S.Ct. 1532, 1539 (2026) ("we assume without deciding that judicial estoppel can apply in the bankruptcy context"). Although the Court could deny the Second Motion to Dismiss based on the Ruben Parties' admission that they lack standing, the Court prefers to address matters on the merits.

[8] The Ruben Parties have asserted no such claim, and the Court is not making any determination as to whether any such claim would be allowable.

> (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;
> (6) material default by the debtor with respect to a term of a confirmed plan;
> (7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;
> (8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;
> (9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a);
> (10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521(a); or
> (11) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1307(c).

In addition to these specific factors for dismissal, courts have recognized a "good faith" requirement in the filing of Chapter 13 cases. As previously explained by this Court:

> While bad faith is not included in the enumerated factors set forth in Section 1307(c), courts have applied a "good faith" standard to Chapter 13 cases when deciding whether to dismiss a case "for cause" under Section 1307(c). Courts use a "totality of the circumstances" test in determining whether a Chapter 13 case was filed in good faith, and the burden of proving that the case should be dismissed is on the moving party.

*In re Kelly*, 656 B.R. 541, 591 (Bankr. D. Md. 2023) (internal citations omitted), *aff'd sub nom. Kelly v. Naples Prop. Holding Co., LLC*, 671 B.R. 432 (D. Md. 2025). Courts have also found cause for dismissal when a bankruptcy case is a two-party dispute lacking a legitimate bankruptcy purpose. As stated by the United States District Court for the District of Maryland:

> A court may dismiss two-party disputes for cause because those cases undermine the collective nature of bankruptcy. The

> Bankruptcy Code is "not intended to provide an additional forum for the continuation of litigation over what is essentially a two-party dispute."

*Liebmann v. Goden*, 629 F.Supp.3d 314, 323 (D. Md. 2022) (citing *In re Crown Fin., Ltd.*, 183 B.R. 719, 723 (Bankr. M.D.N.C. 1995)), *aff'd sub nom. Rullan v. Goden*, No. 22-2099, 2023 WL 4787463 (4th Cir. July 27, 2023).

Here, the Second Motion to Dismiss does not rely on the specific examples of "cause" set forth in Section 1307(c). Rather, the Ruben Parties argue that the Debtor's bankruptcy case was filed in bad faith because it lacks a legitimate financial purpose and consists of a "tactical litigation maneuver designed to shelter a serial, *pro se* vexatious litigant from the consequences of his tortious actions, while providing him a federal platform to continue a relentless campaign of harassment against [the Ruben Parties]." The Court disagrees. As previously stated, six (6) proofs of claim were filed in the Debtor's bankruptcy case, soundly suggesting that this case was filed with an intent to reorganize the Debtor's financial affairs. The number of filed claims also confirms that this case is not a two-party dispute between the Debtor and the Ruben Parties (who did not file proofs of claim). More importantly, however, is the fact that the State Court Action, the Criminal Case, and the allegations underlying the Second Motion to Dismiss all took place several months *after* the Debtor commenced this bankruptcy case. Clearly this case was not filed with the intention of bringing the Debtor's disputes with the Ruben Parties to a federal forum or otherwise filed as a nefarious tactic in litigation that had not yet even commenced.

3. <u>The Ruben Parties' Second Motion to Dismiss must be denied</u>.

In sum, the Court concludes that, based on the record before it, the Ruben Parties are not parties in interest in this bankruptcy proceeding and thus lack standing to file the Second Motion to Dismiss. The Court's conclusion is based on the Ruben Parties' failure to establish that they have a claim against the Debtor entitled to treatment in the Debtor's bankruptcy case, failure to

establish (or even assert) that there is an executory contract between the parties, and admission that they have no standing in this case. Even if the Ruben Parties did have standing to request relief from this Court, the Second Motion to Dismiss does not present sufficient cause to dismiss this case as a bad-faith filing. Rather, it appears to the Court that the allegations contained in the Second Motion to Dismiss and the Debtor's related pleadings would be more appropriately presented in the various state courts in which the parties are litigating. For these reasons, the Second Motion to Dismiss must be denied.[9]

B. The Debtor's Motion to Enforce Automatic Stay

The Court will deny the Debtor's Motion to Enforce Automatic Stay for similar reasons. The gravamen of the motion is that the Ruben Parties filed their counterclaim in the State Court Action with knowledge of the Debtor's bankruptcy case, allegedly violating the automatic stay imposed by Section 362(a). Although the Ruben Parties may have had informal notice of the bankruptcy case in light of the June 18, 2025 email attached to the Debtor's reply in support of his Supplemental Statement,[10] the issue of notice is of no import because the Ruben Parties' filing in

---

[9] As a practical matter, the reprieve afforded the Debtor through denial of the Second Motion to Dismiss will likely be short-lived. This Court expects that the United States District Court for the District of Maryland will dismiss the Debtor's appeal of the Order Denying Confirmation because it is not a "final order" for purposes of appeal. *See Byrd v. Branigan*, No. CIV.A. AW-06-0895, 2006 WL 4458702, at *2 (Bankr. D. Md. Nov. 29, 2006) ("An order denying confirmation of a proposed Chapter 13 plan, without also dismissing the underlying petition or proceeding, is not final for purposes of appeal."). Once the appeal is dismissed, this Court will either dismiss the Debtor's bankruptcy case or convert it to a Chapter 7 proceeding.

[10] The Ruben Parties only deny receiving "formal notice" of the Debtor's bankruptcy case because they were not identified in the Debtor's schedules or creditor matrix. Nevertheless, "[n]otice or actual knowledge of a bankruptcy case is described as 'knowledge of facts sufficient to apprise the creditor that a case was actually filed, and where the proceeding is pending.'" *In re Foxson*, 660 B.R. 633, 644 (Bankr. D. Md. 2023) (quoting *In re Taylor*, 2009 WL 3398711 at *5 (Bankr. D. Md. Oct. 2, 2009)), *aff'd sub nom. Foxson v. N. Am. Specialty Ins. Co.*, No. CV RDB-23-2843, 2024 WL 3252957 (D. Md. July 1, 2024). Based on the email correspondence, it appears the Ruben Parties had knowledge of the bankruptcy case no later than a month after the Debtor filed his Chapter 13 petition.

the State Court of the counterclaim and motion to clarify the impact of the stay did not violate the automatic stay.

The counterclaim seeks a judgment against the Debtor based on post-petition events. As explained by the United States Court of Appeals for the Fourth Circuit:

> A petition filed under Title 11 of the Bankruptcy Code "operates as a stay, applicable to all entities, of ... the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case." 11 U.S.C.A. § 362(a)(1) (West Supp. 1991). The stay is limited to actions that could have been instituted before the petition was filed or that are based on claims that arose before the petition was filed. 2 *Collier on Bankruptcy* ¶ 362.04[1] (L. King 15th ed. 1989). It does not include actions arising post-petition. *Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir.), *cert. dismissed,* 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988). Thus, this provision did not bar the institution of the Pennsylvania district court action by Bellini as a result of a post-petition breach of contract by Mason and Dixon. *See Weymouth v. York (In re York)*, 13 B.R. 757 (Bankr. D. Me. 1981).
>
> However, the stay is also applicable to "any act to obtain possession of property of the estate or of property from the estate" and to "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C.A. § 362(a)(3)–(4) (West 1979 & Supp. 1991). Because attachment or execution of a judgment obtained as a result of a post-petition claim would fall within the stay provision of subsections 362(a)(3) and (4), a creditor must obtain relief from the stay to satisfy a judgment against property of the bankruptcy estate.

*Bellini Imports, Ltd. v. Mason and Dixon Lines, Inc.*, 944 F.2d 199, 201 (4th Cir. 1991). The grounds for the Ruben Parties' alleged counterclaim did not arise until December 11, 2025 – the date of the alleged "blackout" – nearly seven months *after* the Debtor filed his Chapter 13 petition on May 20, 2025. Therefore, the automatic stay imposed by Section 362(a) when the Debtor filed his Chapter 13 petition could not have possibly stayed the filing of the then non-existing counterclaim. Nevertheless, as discussed in *Bellini*, the Ruben Parties must obtain relief from the automatic stay from this Court before undertaking "any act to obtain possession of property of the

estate or of property from the estate" and/or "any act to create, perfect, or enforce any lien against property of the estate." *See* 11 U.S.C. § 362(a)(3) and (4) (imposing the automatic stay with respect to these types of acts). *See also Bellini Imports v. Mason and Dixon Lines*, 944 F.2d at 201 (recognizing that the commencement of a post-petition proceeding is not stayed but an act to enforce a post-petition judgment against property of the estate is). In other words, in the event the Ruben Parties obtain a judgment against the Debtor in the State Court Action, they must come back to this Court to obtain relief from the automatic stay for authorization to execute against any property of the Debtor's bankruptcy estate (if the Debtor's bankruptcy case is still pending).

Similarly, the Ruben Parties' filing of the subsequent request for clarification regarding the application of the automatic stay in the State Court Action did not violate the automatic stay because the filing occurred long after the bankruptcy filing.

The commencement of the Criminal Case also did not violate the automatic stay because the Ruben Parties filed the application for charges post-petition and also because a criminal proceeding is specifically exempted from application of the automatic stay in Section 362(b).[11]

Accordingly, the Debtor's Motion to Enforce Automatic Stay and his request for damages and/or sanctions pursuant to Section 362(k) must be denied.

## III. CONCLUSION

For the foregoing reasons, the Court will deny the Second Motion to Dismiss, deny the Motion to Enforce Automatic Stay, and deny the Debtor's request for damages and sanctions. The Court will enter an order consistent with this Memorandum Opinion.

---

[11] "The filing of a petition … does not operate as a stay … under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1).

cc: Debtor – Drae Watkins (*pro se*)
Movants/Respondents – Stephen D. Ruben and Law Offices of Ruben and Ruben, LLC
Chapter 13 Trustee – Timothy P. Branigan

**END OF MEMORANDUM**